**In re Margie WALKER, Debtor.**

**Margie Walker, Plaintiff,**

**v.**

**Contimortgage, Defendant.**

**Bankruptcy No. 98 B 39289.**
**Adversary No. 98 A 00783.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

May 5, 1999.

Ira J. Rheingold, Mary Welsh, Legal Assistance Fdtn. of Chicago, Chicago, IL, for Plaintiff.

Ira Nevel, Chicago, IL, for Defendant.

Craig Phelps, Chicago, IL, Chapter 13 Trustee.

### MEMORANDUM OPINION ON CONTIMORTGAGE CORPORATION'S MOTION FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary case relates to the bankruptcy petition filed by plaintiff-debtor Margie Walker ("Walker") under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Walker's Amended Complaint to Determine Validity and/or Extent of Secured Claim ("Complaint") is pleaded in two counts against the defendant Contimortgage Corporation ("Conti").

Walker's first Count alleges that Investaid Corporation ("Investaid"), Conti's predecessor in interest, violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, by taking a security interest in Walker's principal place of residence and not properly disclosing the actual amount financed in the Truth and Lending Statement provided to Walker.

Walker's second Count alleges that Investaid violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, by paying a provider of settlement services a referral fee or kickback on Walker's loan. Walker contends that as Investaid's assignee Conti is now liable for the alleged violations. 15 U.S.C. § 1641.

Walker seeks a declaration that Walker has validly rescinded the transaction, a declaration that any mortgages held by Conti on Walker's property are void and unenforceable, a determination that Conti has no allowed secured claim and no allowed unsecured claim in Walker's bankruptcy case, an award to Walker of $2,000 in statutory damages for Conti's alleged failure to rescind, recoupment of $2,000 for Conti's disclosure violation pursuant to the TILA, 15 U.S.C. § 1640, an order that Conti return all money paid to it in connection with the transaction, an award to Walker of three times the amount paid for Conti's settlement services pursuant to RESPA, 12 U.S.C. § 2607, and an award to Walker of costs pursuant to the TILA, 15 U.S.C. § 1640 and RESPA, 12 U.S.C. § 2607(d)(5).

Conti has moved for summary judgment. For reasons stated below, the motion is denied as to both the TILA Count I and RESPA Count II.

## Undisputed Facts

The parties filed statements of undisputed facts under Local Bankruptcy Rule 402(M) and 402(N). The movant's 402(M) statement did not comply with Local Rules because it failed to refer to supporting materials on which each statement relies, and the supporting affidavit did not attach copies of documents referred to. Nonetheless, Plaintiff's 402(N) response admitted many statements, and her own undisputed 402(N) statements supply additional facts which were not disputed.

The following facts appear from the foregoing to be undisputed:

On April 28, 1995, Walker and Investaid entered into a mortgage transaction. Conti is Investaid's successor in interest and is currently the holder of the mortgage. The principal amount of the transaction was $63,750.00. The Truth in Lending Statement provided to Walker disclosed that the Amount Financed was $63,296.25. Included in the Amount Financed was a mortgage broker fee of $4,462.50 paid to Advanta Plus Mortgage ("Advanta"). In addition to this fee, Investaid paid Advanta a yield spread premium of $1,912.50. Walker alleges that this payment is a kickback in violation of 12 U.S.C. § 2607 of RESPA.

On July 18, 1996, when Walker fell behind on her mortgage, Conti filed a foreclosure action against her home in the Circuit Court of Cook County (No. 96 CH 7578). While that case was pending, on September 24, 1996, Walker filed a Chapter 13 petition (No. 96 B 25130). Conti filed a proof of claim in that bankruptcy; Walker did not file an objection. That bankruptcy case was eventually dismissed on July 31, 1997. Conti alleges that the plan was confirmed. There is, however, an Order Dismissing Case which does not indicate that the plan was ever confirmed but instead indicates that the hearing on confirmation was concluded. Thus, Walker's proposed Chapter 13 plan was never confirmed.

Walker did not file an answer or an appearance in the state foreclosure action. Consequently, on September 25, 1997, the state court entered a default judgment of foreclosure and order of sale against Walker. Walker was given by the state court order until December 25, 1997, to redeem the property. Walker did not redeem and on December 23, 1997, she filed this second Chapter 13 petition. Therefore the foreclosure sale was never held. Conti filed its proof of claim in this bankruptcy based on the judgment.

## The Pleadings

Related to this second bankruptcy, Walker filed the instant Adversary Complaint alleging that the documents prepared and executed for her mortgage transaction violated the TILA and the RESPA. In response, Conti has moved for Summary Judgment premised on three arguments: (1) that Walker's current claims are compulsory counterclaims that should have been raised in the first bankruptcy proceeding against the Conti claims, (2) that 11 U.S.C. § 1325(a) gives Walker's first bankruptcy a res judicata effect as to the TILA and RESPA claims, and (3) that the state court judgment of foreclosure bars Walker's claims by *res judicata* or collateral estoppel.

## Jurisdiction

Jurisdiction lies under 28 U.S.C. § 1334(b) and the matter is referred here under General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This case is a core proceeding under 28 U.S.C. § 157(b)(2)(K) because it attacks Conti's asserted mortgage lien. Venue is appropriate under 28 U.S.C. § 1409(a)

## Standard For Motion of Summary Judgment

Summary judgment motions are governed by Fed.R.Civ.P. 56(c) made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7056. Summary judgment

should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Summary judgment is granted to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

The burden is on the moving party to show that no genuine issue of material fact exists and that judgment in its favor should be granted as a matter of law. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The court should draw all inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355–56.

### Discussion

The declared purpose of the TILA, originally enacted in 1968, is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uniformed use of credit against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998). Accordingly, the Act requires creditors to make various conspicuously displayed "material disclosures" in the granting of consumer credit. The required material disclosures include items such as finance charges, annual percentage rates of interest, total number of payments, and the borrower's rights. *Id.* Failure to satisfy the TILA disclosure requirements subjects a lender to criminal penalties for noncompliance (*see* § 1611)

as well as to statutory and actual damages traceable to a lender's failure to make the requisite disclosures. *See* § 1640. Assignees can be held liable for the conduct of assignors. *See* § 1641. Section 1640 provides that an action for such damages may be brought by the borrower or the borrower may assert the right to damages "as a defense by recoupment or set-off" in a collection action. Moreover, the Act also authorizes a borrower, whose loan is secured with his "principal dwelling" and who had been denied the requisite disclosures, to rescind the loan transaction entirely. The right to damages and rescission is subject to certain time limits imposed by the statute.

The declared purpose of RESPA is *inter alia* to "effect certain changes in the settlement process for residential real estate that will result ... in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601. A violation of the Act subjects parties to criminal fines or imprisonment or civil damages amounting to three times the amount of any charge paid for such settlement service. 12 U.S.C. § 2607.

### *The TILA and the RESPA Claims Were Not Compulsory Counterclaims*

Conti argues that Walker had an obligation under Fed.R.Civ.P. 13(a) (Fed. R. Bankr.P. 7013) in her first bankruptcy to bring as a compulsory counterclaim to Conti's claim her assertions under TILA and RESPA. Conti argues in this regard that the TILA and RESPA claims arose out of the subject note and mortgage that existed at the filing of Walker's last bankruptcy case.

Fed.R.Civ.P. 13(a) states in part: A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's

claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

A "logical relationship" test is used to determine whether a claim and counterclaim arise from the same transaction or occurrence for purposes of Rule 13(a). *Valencia v. Anderson Bros. Ford*, 617 F.2d 1278, 1291 (7th Cir.1980), *rev'd on other grounds*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981). In determining whether a particular counterclaim is compulsory, it depends not so much the immediacy of its connection with the plaintiff's claim but rather its logical relationship to that claim. *Id.*

Authorities generally hold that TILA claims and claims for the underlying debt are not compulsory counterclaims:

> [T]he sole connection between a TILA claim and a debt counterclaim is the initial execution of the loan document. The TILA claim and the debt counterclaim raise different legal and factual issues governed by different bodies of law. A TILA suit for inadequate disclosure ... can often be resolved by an examination of the face of the loan document. A debt counterclaim, on the other hand, can raise the full range of state law contract issues. The two claims do not ... spring from the same "aggregate of operative facts." The rights and obligations of the parties with respect to the two claims hinge on different facts and different legal principles.

*Id.* at 1291–92; *See also Marshall v. Security State Bank (In re Marshall)*, 121 B.R. 814 (Bankr.C.D.Ill.1990), *aff'd*, 132 B.R. 904 (C.D.Ill.1991), *aff'd*, 970 F.2d 383 (7th Cir.1992) (TILA claim not a compulsory counterclaim); *Christy v. Heights Finance Corp.*, 101 B.R. 542 (C.D.Ill.1987) (failure to raise TILA claim in consumer's bankruptcy is no bar to subsequent suit against creditor).

■ Neither TILA nor RESPA claims are compulsory counterclaims. The only connection with the foreclosure of the mortgage is the initial execution of mortgage documents. RESPA and TILA claims raise different legal and factual issues governed by different bodies of law than state foreclosure statutes. Mortgage foreclosure has to do with failure of the borrower to make payments, rendering the borrower in default. The TILA claim, on the other hand, has to do with alleged non-disclosure of certain material items in the granting of consumer credit. The RESPA claim deals with asserted payment of prohibited fees or kickbacks for referral of business for real estate settlement services. These are not compulsory counterclaims.

### *Bankruptcy Code § 1327(a) Is Inapplicable*

■ Conti also argues that under the Bankruptcy Code 11 U.S.C. § 1327(a) Walker is bound by terms of her plan in the first bankruptcy. Section 1327 provides that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Here, however, Walker's earlier Chapter 13 case was dismissed without the plan ever being confirmed; therefore, § 1327 is inapplicable.

### *Conti's State Court Judgment of Foreclosure Entered by Default Does Not Bar this Complaint by Collateral Estoppel or Res Judicata*

Conti alleges that the foreclosure judgment, entered by default, bars the current TILA and RESPA claims by operation of the doctrines of collateral estoppel and res judicata.

■ Violations of the TILA requirements give rise to two types of remedies: rescission and damages. The remedies sought by Walker under the two Counts of her Complaint here are related to both rescission and damages.

■ As to the rescission remedies sought by Walker, the TILA lists events that might terminate the rescission right, none of which have yet occurred. The TILA provides for an initial three-day period during which consumers have an unconditional right to change their minds and cancel the transaction for any reason, or for no reason at all. 15 U.S.C. § 1635(a). Should a creditor fail to deliver properly the rescission notice and all material disclosure, the right to rescind is extended. Where the mandatory information is not properly delivered, the right to rescind continues until whichever of the following events occurs first: expiration of three years after the consummation of the transaction; transfer of all of the consumer's interest in the property; or sale of the property. 15 U.S.C. § 1635(f); 12 CFR § 226.23(a)(3).

■ According to the Official Staff Commentary to Regulation Z, which was promulgated by the Board of Governors of the Federal Reserve System to implement the TILA, "[a] sale or transfer of the property need not be voluntary to terminate the right to rescind the transaction." Official Staff Commentary to Reg. Z, 12 CFR § 226.23(a)(3). Once there has been a final foreclosure sale of the borrower's principal residence and the redemption period has expired, the right to rescind will be terminated. *Id.; Brown v. Financial Enter. Corp. (In re Hall)*, 188 B.R. 476, 484 (Bankr.D.Mass.1995).

■ Here, Walker filed the pending Adversary proceeding on April 14, 1998, which was less than three years after Walker and Investaid entered into the transaction on April 28, 1995. Although Conti had earlier obtained a state court Judgment of Foreclosure and Sale, the foreclosure sale has not yet taken place and Walker has not transferred her interest in the property or had it transferred through foreclosure. Thus, under TILA, Walker's right to rescind had not expired when the instant Adversary case was filed.

■ The TILA does not state when a claim for damages terminates; therefore, a determination must be made as to whether the state court judgment of foreclosure prevents the pending damage claims. All federal courts must give the same full faith and credit to a prior state court judgment that the judgment would receive in the court of the state in which it was rendered. 28 U.S.C. § 1738; *Migra v. Warren City School Dist. Board of Education*, 465 U.S. 75, 85, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274, *reh'g denied*, 471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985); *Hagee v. City of Evanston*, 729 F.2d 510, 512 (7th Cir.1984). Bankruptcy courts are bound by the obligation. *See Gouveia v. Tazbir*, 37 F.3d 295, 301 (7th Cir.1994).

Here, an Illinois court rendered the prior default foreclosure judgment. Accordingly, Illinois law must be examined to determine whether the state court default judgment can bar Walker's current claims for damages.

■ Conti's collateral estoppel argument is easily disposed of. There are four elements to the doctrine of collateral estoppel: (1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (3) the resolution of the particular issues was necessary to the court's judgment, and (4) those issues are identical to issues raised in the subsequent suit. *Wozniak v. DuPage County*, 845 F.2d 677, 682–83 (7th Cir.1988). Collateral estoppel does not apply here because when a judgment is entered by default the "actually litigated" requirement has not been met. *Grip–Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 469 (7th Cir. 1982), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983) ("a default judgment is not a proper basis for collateral estoppel"); *Meyer v. Rigdon*, 36 F.3d

1375 (7th Cir.1994) (default judgment not given collateral estoppel effect because no issue "actually litigated").

■ Unlike collateral estoppel, res judicata does apply to default judgments. *Schlangen v. Resolution Trust Corp.*, 934 F.2d 143 (7th Cir.1991) (citing *Housing Authority for La Salle County v. Young Men's Christian Ass'n of Ottawa*, 101 Ill.2d 246, 461 N.E.2d 959, 78 Ill.Dec. 125 (1984)). While under Illinois law counterclaims are permissive and not compulsory (*Foster v. Foster*, 273 Ill.App.3d 106, 113, 652 N.E.2d 350, 355, 209 Ill.Dec. 810, 815 (3rd Dist.1995)), a final judgment on the merits rendered by a court of competent jurisdiction bars the same parties or their privies from relitigating issues that were raised or could have been raised in the prior action. *Schlangen*, 934 F.2d at 143.

■ *Res judicata* bars not only questions actually decided, but also all grounds for recovery and defenses which might have been presented in the prior litigation between the parties. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1233–34 (7th Cir.1986) (citing *Bernard Bros. v. Deibler*, 344 Ill.App. 222, 230, 100 N.E.2d 512, 516 (2d Dist.1951)).

■ There are three elements to res judicata under Illinois law: (1) identity of parties or privies in the two suits; (2) identity of causes of action in the prior and current suit; and (3) a final judgment on the merits in a prior action. *Schlangen*, 934 F.2d at 143. Walker and Conti were both parties to the Illinois foreclosure action; therefore, there is an identity of the parties. However, the other requirements for *res judicata* have not been shown.

■ In order for a judgment to be final and appealable the following criteria must be met:

[A] judgment or order must terminate the litigation between the parties on the merits of the cause, so that, if affirmed, the trial court has only to proceed with execution of the judgment. [Citations.]

While the order need not dispose of all the issues presented by the pleadings, it must be final in the sense that it disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof. [Citations]

*Kellerman v. Crowe*, 119 Ill.2d 111, 115, 518 N.E.2d 116, 118, 115 Ill.Dec. 591, 593 (1987). A foreclosure judgment does not dispose of all the issues between the parties, and it does not terminate the litigation because a foreclosure sale must be held and the trial court must enter a subsequent order approving the foreclosure sale and directing distribution. *King City Fed. Sav. and Loan Ass'n v. Ison*, 80 Ill.App.3d 900, 901–02, 400 N.E.2d 562, 563, 36 Ill.Dec. 142, 143 (5th Dist.1980); *Marion Metal & Roofing Co., Inc. v. Mark Twain Marine Indus., Inc.*, 114 Ill.App.3d 33, 35, 448 N.E.2d 219, 221, 69 Ill.Dec. 759, 761 (5th Dist.1983). Nonetheless, a foreclosure judgment is final as to the matters it adjudicates and as to the foreclosure rights and debts. *Bell Fed. Sav. and Loan, Ass'n v. Bank of Ravenswood*, 203 Ill.App.3d 219, 223, 560 N.E.2d 1156, 1159, 148 Ill.Dec. 559, 562 (1st Dist.1990); *King*, 80 Ill.App.3d at 901, 36 Ill.Dec. at 143, 400 N.E.2d at 563; *Santana v. Zipperstein*, 142 Ill.App.3d 386, 388, 491 N.E.2d 1231, 1232, 96 Ill.Dec. 771, 772 (1st Dist.) *appeal denied* (1986); *Marion Metal*, 114 Ill. App.3d at 35, 448 N.E.2d at 221, 69 Ill.Dec. at 761.

■ The state court foreclosed on Walker's mortgage and did finally dispose of the mortgage default issue, the amount owed by Walker on the note and mortgage, and Walker's liability for any deficiency. *See Santana*, 142 Ill.App.3d at 388, 491 N.E.2d at 1233, 96 Ill.Dec. at 773. On those issues, the default judgment was final. However, the sale was not held and state court did not confirm the foreclosure sale. Thus, the judgment did not dispose of claims to the property itself or terminate the litigation.

■ The final element required for *res judicata* is whether the earlier judgment was on the same cause of action as that now presented. Two different tests have been applied by Illinois courts The "same evidence" test is applied by some intermediate appellate courts in Illinois to determine whether both actions require the same proof. The "transactional" test is applied by other intermediate appellate courts to determine whether both actions arise from the same group of operative facts. The Illinois Supreme Court has not resolved the split in those approaches. *Schlangen*, 934 F.2d at 147. However, under either test, it cannot be said that the default judgment was on the same cause of action as those asserted here.

Under the "same evidence" test, Plaintiff's damage claim in this action would not constitute the same cause of action as the state court foreclosure. The evidence that Conti used to demonstrate that it was entitled to a judgment of foreclosure is not the same evidence that Walker would use to demonstrate that Conti violated the TILA. In order to prove its foreclosure claim, Conti needed to show that there was mortgage and that Walker was in default. A determination that there has been a violation of the TILA, on the other hand, requires review of the mortgage documents for disclosures made and proof of the omitted disclosures. *See Valencia v. Anderson Bros.*, 617 F.2d 1278, 1292 (7th Cir.1980).

Similarly, under the "same evidence" test, the RESPA claim would not constitute the same cause of action. A determination that there has been a violation of RESPA requires evidence that there has been payment of certain prohibited fees or kickbacks for referral of business for real estate settlement services. 12 U.S.C. § 2607.

Under the "transactional" approach, Walker's TILA and RESPA claims here would still not involve the same cause of action since those claims do not arise from the same group of operative facts as the state court foreclosure action. To be sure,

all of the TILA and RESPA claims assertedly arise under the same mortgage documents. However, Conti's judgment of foreclosure was simply based on Walker's defaulting on a loan contract. *See Valencia*, 617 F.2d at 1292. Walker's TILA and RESPA claims involve the same loan, "but [they] do[ ] not arise from the obligations created by the contractual transaction." *Id.*

■ Instead, both the TILA and RESPA claims invoke statutory penalties designed to enforce federal policy. The TILA penalty is designed to enforce statutory policy against inadequate disclosure by lenders. *Id.* The RESPA penalty is designed to enforce federal policy against payment of certain fees or kickbacks that increase unnecessarily the cost of settlement services. 12 U.S.C. § 2601. Different operative facts must be shown to support those claims than were needed to prove a mortgage foreclosure right.

Therefore, the TILA and RESPA claims do not involve the same cause of action under either the "same evidence" or "transactional" approaches.

Thus, all elements of *res judicata* have not been met. Accordingly, Walker is still able to assert her claims under both the TILA and RESPA.

### CONCLUSION

For the above reasons, Conti's Motion for Summary Judgment is denied as to both the TILA Count I and the RESPA Count II.